# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# Wheeling

**ROSSAHN BLACK,**

       **Petitioner,**

v.                                                         **Civil Action No 5:20-cv-210**
                                                                          Judge Bailey

**R. HUDGINS, Warden of FCI Gilmer,**

       **Respondent.**

## REPORT AND RECOMMENDATION

### I.    Procedural Background

On September 28, 2020, the pro se petitioner, Rossahn Black, filed a Petition for Writ of Habeas Corpus ("the petition") pursuant to 28 U.S.C. § 2241. [Doc. 1]. The petitioner challenges the way the Bureau of Prisons ("BOP") has calculated his sentence.

On October 15, 2020, the petitioner was granted leave to proceed *in forma pauperis*. [Doc. 8]. On October 26, 2020, following a preliminary review, which determined that summary dismissal was not appropriate, the respondent was ordered to show cause why the petition should not be granted. [Doc. 10]. On November 18, 2020, the respondent filed a Motion to Dismiss, or in the alternative, Motion for Summary Judgment. [Doc. 12]. On November 19, 2020, a Roseboro notice was issued. [Doc. 13]. On December 8, 2020, the petitioner filed his response. [Doc. 15].

### II.    Legal Standard

**A. Motion to Dismiss**

1

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure require "only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324

2

F.3d 761, 765 (4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

**B.      Motion for Summary Judgment**

The Supreme Court has recognized the appropriateness of summary judgment motions pursuant to Rule 56 of the Federal Rules of Civil Procedure in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 (1977); see also Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991).

Motions for summary judgment impose a difficult standard on the moving party because it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. FDIC, 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). Any permissible inferences to be drawn from the underlying facts must be viewed in the light

3

most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Anderson, 477 U.S. at 248-49.

### III. Background[1]

On April 12, 2008, the petitioner was arrested by Michigan state authorities in Washtenaw County for Carrying a Concealed Weapon (Case No. 08-674-FH) and for Operating a Motor Vehicle with No Operators License (Case No. DR2-08-000-0769). On May 26, 2009, the petitioner was sentenced by the state court in Case No. 08-674-FH to 1-year, with 409 days of credit. The petitioner was released for time served on May 28, 2009. On June 16, 2009, the petitioner was sentenced by the state court in Case No. DR2-08-000-0769 to 90 days, with credit for 90 days-time served, and released.

The petitioner was subsequently arrested on December 7, 2009, by Michigan authorities from the Highland Park Police Department, for Operating a Vehicle without a License. Several firearms were found in his vehicle at that time, and the petitioner was interviewed by ATF agents the same day. On December 8, 2009, the petitioner was arrested at the Highland Park Police Department by the United States Marshals Service ("USMS") for multiple counts of Felon in Possession of a Firearm.

On April 28, 2011, a three-count Superseding Indictment was returned against the petitioner in the United States District Court for the Eastern District of Michigan.

---

[1] Unless otherwise noted, the information in this section is taken from the petitioner's criminal docket available on PACER. See United States v. Black, 2:10-cr-20225-SDD-PJK (E.D. MI). Philips v. Pitt Cnty. Mem. Hosp., 572 F. 3d 176, 180 (4th Cir. 2009) (courts "may properly take judicial notice of public record); Colonial Penn. Ins. Co. v. Coil, 887 F.2d 1236, 21239 (4th Cir. 1989) ("We note that 'the most frequent use of judicial notice is in noticing the contents of court records.'").

Count One charged the petitioner with being a Felon in Possession of a Firearm in violation of 18 U.S.C. §§ 922(g), 924(e). This count related to a December 7, 2009 incident. Count Two also charged the petitioner with being a Felon in Possession of a Firearm in violation of 18 U.S.C. §§ 922(g), 924(e).  This count related to an incident on December 4, 2009. Finally, Count Three again charged the petitioner with being a Felon in Possession of Firearm in violation of 18 U.S.C. §§ 922(g), 924(e).  The incident giving rise to this final count occurred on February 5, 2008. The indictment also alleged that the petitioner was subject to enhanced penalties under the Armed Criminal Career Act (ACCA), 18 U.S.C. § 924(e), Following a jury trial, the petitioner was found guilty on all three counts. On October 4, 2012, the petitioner was sentenced to three 300-month terms of imprisonment, with all three counts to be served concurrent with one another. This sentence resulted in an aggregate term of 300 months.

On appeal, the judgment of conviction was affirmed. Subsequently, the petitioner filed a § 2255 Motion. On March 30, 2016, the petitioner file a motion to amend his § 2255 to include a claim under Johnson v. United States,135 S.Ct. 2551 (2015). In response, the government stated that in light of Johnson the petitioner was no longer subject to the ACCA and the petitioner should be resentenced. On December 12, 2016, the district judge vacated the petitioner's sentence and directed the probation department to prepare a new presentence report. The petitioner's guideline range was 210 to 262 months. On January 17, 2017, the petitioner was resentenced, and his sentence was reduced to 120 months imprisonment on Count 1, 66 months of imprisonment on Count 2, and 66 months of imprisonment on Count 3, all to run consecutive to one another. This resentencing resulted in an aggregate term of 252

months of imprisonment, within the guideline range.[2] The petitioner filed an appeal arguing that the district court did not explain its reasoning for imposing consecutive sentences.  In affirming the district court's judgment, the Sixth Circuit Court of Appeals noted:

> In Black's case, the district court thoroughly explained its reasoning in fashioning his sentence. The court noted, in particular, that Black was 'a very dangerous person;' that he had 'a series of violent incidents in prison;' and that his 'violent tendencies and his violent past [were] extraordinary.' The district court, however, also cited Black's 'potential,' and that Black could possibly benefit from better medical treatment. For those reasons, in fact, the district court declined the Government's request to impose an upward variance from the guideline range, while they also led the court to reject Black's request for a downward variance below the guidelines range. Instead, the district court stated that it was satisfied that the guidelines range accurately reflected the appropriate sentence. Thus, the district court crafted Black's sentence so that it would fit within the advisory guideline range, which the court believed "balance[d] the need to protect the community from Mr. Black with trying to find a way to open his potential." And because the district court believed that Black sentence should be within the guidelines range, imposing consecutive sentences was inescapable: Black's three § 922(g) convictions each carried a maximum prison sentence of 120 months, *see* 18 U.S.C. § 924(a)(2), but his applicable guideline range began at 210 months. Thus it was impossible to set Black's sentence within the guideline range without running them consecutively. In short, the district court did not abuse its discretion in deciding to impose Black's sentences to run consecutively, and it gave a full explanation for its decision.

See Doc. 180, Criminal Case No. 2:10-cr-20225-SDD-PJK-1.

The BOP has calculated the Petitioner's federal sentence as commencing on October 4, 2012, the date it was imposed.  The petitioner has received 1032 days prior custody credit against his federal sentence for the time period beginning December 7, 2009, the date of his State arrest, and ending October 3, 2012, the day prior to the

---

[2] On January 31, 2017, the remaining claims asserted in the 2255 motion were denied.

commencement of his federal sentence. The Petitioner's projected release date, via good conduct time, is February 13, 2028. Id.

## IV.     The Pleadings

### A. The Petition

The petitioner alleges that at the time he was resentenced, he had already served 51 months each on Counts two and three concurrently. Accordingly, he maintains that the BOP's calculation of his sentence reflects an end date of 132 months which is in excess of the statutory maximum of 120 months imprisonment for § 922(g) offenses.  He further alleges that the BOP has effectively changed the start date for the sentences on Counts two and three from October 4, 2012 to later dates in 2020 and 2026 and retroactively erased the time he has severed in federal custody on those counts. For relief, he requests that this Court compel the BOP to calculate the time he has served in federal custody from October 4, 2012 through January 17, 2017 to Counts two and three concurrently as ordered by the sentencing court.

### B. Response

The respondent maintains that the BOP correctly calculated the petitioner's sentence following the January 2017 resentencing.  In support of his position, the respondent relies on BOP Program Statement 5880.30 and Headspeth v. Conley, 126 F. Supp 2d 1004 (S.D.W. Va. 2001).

### C. Petitioner's Traverse

In his traverse, the petitioner acknowledges that he was resentenced on January 17, 2017. However, he argues that the BOP's "instructions" changed on that day and could only be changed from that day forward.  The petitioner argues that the BOP's

computation retroactively robs him for time that he has already served in its custody on Counts two and three. He then argues that he is serving a part concurrent, part consecutive or overlapping sentence as authorized by USSG § 5G1.2(d). He also attempts to distinguish the facts of Headspeth.

## V.   Analysis

As previously noted, the petitioner is arguing that by the time he was resentenced on January 17, 2017, he had already served a number of years in the custody of the BOP on his original 300-month concurrent sentences. The petitioner maintains that the BOP is depriving him of credit and extending his incarceration beyond that which is proper.

> Program Statement 5880.30, Sentence Computation Manual (1997), provides:
>
> > In those instances when a court vacates only the sentence and then resentences the defendant to the same or shorter sentence, the sentence shall be computed as commencing on the date of the original computation and **remain in the same sequence** as originally imposed in relation to other sentences **unless the court orders that the sentence be served in a different sequence.**

[Doc. 12-1 at 45] (emphasis added).

In the instant case, it is clear that the sentencing court vacated only the petitioner's sentence and resentenced him to a shorter sentence, an aggregate term of 252 months as opposed to the original aggregate 300 months. In addition, although the petitioner was originally sentenced to three concurrent terms of imprisonment, he was resentenced to three consecutive sentences of 120 months on Count One, 66 months on Count Two and 66 months on Count Three. Therefore, despite the petitioner's vehement argument that the BOP has calculated his resentence incorrectly, the same is simply not true.

In calculating the petitioner's resentence, the BOP has awarded him 1032 days of prior custody credit for the time period beginning December 7, 2009, the date of his state arrest, and ending October 3, 2012, the day prior to the commencement of his original federal sentence.  As of March 7, 2019, the date the petitioner's sentence was last calculated, he had been in custody a total of nine years, two months, and 30 days.[3] [Doc. 12-1 at 40].  As of March 7, 2019, he had earned 379 days of Good Conduct Time and was projected to earn an additional 515 days of Good Conduct Time, resulting in the projected release date of June 25, 2028.  If released on that date, the petitioner will have been in custody a total of 18 years, 6 months and 18 days, or 222 months, 18 days, clearly less than his amended sentence of 252 months.

To the extent that the petitioner argues that the BOP has applied the provision of BOP Program Statement 5880.30 against its plain meaning, he is incorrect.  Despite the petitioner's attempt to "diagram" the sentence contained in that provision to suggest that the BOP did not compute his sentence as commencing on the date of the original sentence, the undersigned's recitation of the BOP's computations clearly establishes that the BOP has calculated his sentence as commencing on October 3, 2012, the date of his original sentence.  The petitioner either fails to recognize or refuses to recognize that his amended sentence on each count was ordered to run consecutive, and therefore, the BOP was required to calculate  an aggregate sentence of 252 months beginning on October 3, 2012 and awarding him 1032 days of prior custody credit.

Likewise, the petitioner's attempt to distinguish <u>Headspeth</u> is misplaced. Although the petitioner maintains  that the facts of his case are distinguishable, they are

---

[3] This represents the petitioner's "custody" credit from December 7, 2009 through March 7, 2019.

9

not. Mr. Headspeth was originally sentenced to a concurrent 10 and 15-year sentence. On appeal, the Fourth Circuit affirmed the sentence on Count One (10 years), vacated the sentence on Count Two (fifteen years), and remanded for resentencing. United States v. Headspeth, 852 F.2d 753, 759 (4th Cir. 1988).

On August 30, 1988, Mr. Headspeth was resentenced on Count Two to five years to run consecutively to Count One for a total period of 15 years imprisonment. He then filed a § 2241 petition seeking credit of 404 days against both the 10 year sentence and the five year sentence, representing the time he was in custody when the sentences were running concurrently as originally ordered. The district court found the same to be unavailable based on the language of PS 5880.30 cited above. There is simply no difference in Mr. Headspeth's case and the instant case.

Finally, the undersigned notes that is would be contrary to the intent of the sentencing court and the amended judgment to credit the petitioner with time served on a sentence ordered to be served consecutive rather than concurrent which was clearly chosen to effectuate a total sentence of 252 months.

## VI. Recommendation

For the foregoing reasons, the undersigned **RECOMMENDS** that the respondent's Motion to Dismiss or for Summary Judgment **[DOC. 12]** be **GRANTED**, and the Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 be **DENIED** and **DISMISSED WITH PREJUDICE.**

Within fourteen days after service of this Report and Recommendation, any party may file with the Clerk of this Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the**

**basis of such objection.** A copy of such objections should also be submitted to the United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to send a copy of this Report and Recommendation to the Petitioner by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record via electronic means. In addition, because this Report and Recommendation completes the referral from the District Court, the Clerk is **DIRECTED** to terminate the Magistrate Judge association with this case.

DATED: January 29, 2021

/s/ James P. Mazzone
JAMES P. MAZZONE
UNITED STATES MAGISTRATE JUDGE